**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | |
| **v.** | **1:05-cr-75-WSD** |
| **DREXEL LAMAR BERRY** | |

## ORDER

This matter is before the Court on the Magistrate Judge's Report and Recommendation [27] regarding Defendant's Motion to Suppress [14], as well as Defendant's Objection to the Report and Recommendation ("Def.'s Objection") [28] and the Government's Objection to the Report and Recommendation ("Govt.'s Obj.") [29].

*Background*

Defendant is charged with being a felon unlawfully in possession of a firearm in violation of 18 U.S.C. § 924(e). He seeks to suppress all evidence obtained as a result of a warrantless traffic stop, including the firearm in question and oral statements made to the police following his arrest. Defendant claims the traffic

stop was illegal because it was not based on a reasonable, articulable suspicion that he or the vehicle was involved in criminal activity.

On December 1, 2005, Magistrate Judge E. Clayton Scofield III issued his Report and Recommendation regarding Defendant's Motion to Suppress, recommending that Defendant's motion be denied.  Defendant objects to the Report and Recommendation, arguing again that the traffic stop was illegal. Defendant reiterates his claim that the officer's reason for stopping the vehicle in which he was a passenger did not provide reasonable and articulable suspicion for the stop.  The Government also objects to the Report and Recommendation.  It argues that the Magistrate Judge incorrectly characterized the requirements of Georgia law at the time of the traffic stop in question, and that the vehicle's failure to meet these requirements provided a reasonable and articulable suspicion for the stop.

The facts, except for one, generally are undisputed.  On July 14, 2004, City of Atlanta Police Officer L.D. Whitsey was patrolling in Zone 4.  He observed a Chevrolet Avalanche and stopped it.  According to Officer Whitsey, the stop was based on the ground that the vehicle "had a drive-out tag on it without a validation sticker on it that is required by the state."  (Transcript of September 15, 2005

2

Hearing ("Transcript") at 38).  He testified regarding the tag that he could not "remember exactly if it had a dealership name on it, but it was just a paper tag on there without the silver validation sticker on it."  (Id.)  Officer Whitsey described the validation sticker as a reflective sticker with "the make, V.I.N. and the expiration date of that validation sticker."  (Id.)  It was the absence of the validation sticker that caused Officer Whitsey to conclude the vehicle was in violation of Georgia law and thus he stopped the vehicle.[1]

The Report and Recommendation discussed the validation sticker requirement and whether it applied on July 14, 2004.  The Magistrate Judge reviewed O.C.G.A. § 40-2-8(b)(2)(A) (2004) and certain amendments to the section that became effective on July 1, 2005.  (See R&R at 10-15.)  Based on this review, the Magistrate Judge found (i) that "Georgia law apparently did not, on July 14, 2004, when this stop occurred, require the silver validation stickers" but, (ii) that the law "clearly required that the expiration date and the month of the registration period be prominently displayed on the temporary tag as required by the law then in force . . . ."  (Id. at 12-13.)  The Magistrate Judge concluded that the absence of

_____

[1]  The "validation sticker" is alternately referred to in this order as the "security strip."

3

the validation sticker was not a proper basis for the officer to make the stop, but that the absence of the expiration date and month of the registration period was. (Id. at 13.)  He therefore recommended that the motion to suppress be denied.  (Id. at 15.)

Defendant agrees with the Magistrate Judge's conclusion that "Georgia law did not require that dealer tags have the silver strip of tape."  (Def.'s Obj. at 4.) Defendant objects to the Magistrate Judge's finding that the tag on the vehicle in question did not include the expiration date and the month of the registration period as required by the law that was in effect on July 14, 2004.  (Id. at 5-6.)  Defendant contends that the Magistrate Judge misunderstood Officer Whitsey's testimony at the September 15, 2005 hearing.  (Id.)  Specifically, he claims that Officer Whitsey's reason for the stop was focused on the absence of the validation sticker and not the absence of information on the tag.  (Id.)  He cites the following testimony by Officer Whitsey at the suppression hearing:

> Q.  Was it -- do you remember, was it a tag from a car dealership or something of the sort?
>
> A.  I can't remember exactly if it had a dealership name on it, but it was just a paper tag on there without the silver validation sticker on it.

> Q.  These are the **reflective stickers** that have to have
> permanent marker dates written in when they expire?
>
> A.  Right.  **It** has to have the make, V.I.N. and the expiration
> date of that validation sticker on it.
>
> Q.  And it didn't have any of that?
>
> A.  It didn't have any of that on it.

(Transcript at 38) (cited in Def.'s Obj. at 5-6) (emphasis added).

Defendant argues that "[f]rom the statement that 'it didn't have any of that,'
the magistrate judge concluded the **tag** did not have a date and was, therefore, in
violation of the law.  The problem with this conclusion is that when the officer
made this statement, he was not talking about the tag, he was talking about the
**validation sticker**."  (Def.'s Obj. at 6.)  Defendant also reasserts that the stop was
illegal on the grounds that because the vehicle might not have been purchased from
a dealer, no tag was required, and thus Officer Whitsey could not have had a
reasonable basis that it was illegal not to have a temporary tag.  (<u>Id.</u> at 6-9.)
Defendant references Officer Whitsey's testimony that he could not "remember
exactly if [the tag] had a dealership name" for the proposition it was unreasonable
for the officer to believe this was a dealership sale.  (<u>Id.</u> at 6-7.)

The Government also objects to the Report and Recommendation,

5

specifically, its finding that the silver validation sticker was not required before July 1, 2005.  (Govt.'s Obj. at 1.)  The Government argues that the validation sticker requirement was imposed in early 2001 in the Georgia Department of Revenue's Administrative Code (the "Administrative Code") provisions regarding temporary license plates issued by new or used car dealers.  (Id. at 2-4.)  The Government notes that, since early 2001, Subchapter 560-10-17-.01 of the Administrative Code required dealers to issue standard temporary license plates (so-called "drive-out tags") that complied with the requirements of the code to purchasers of new or used cars.[2]  The Government argues further that the Administrative Code required certain security features on drive-out tags, including the holographic security strip at issue here:

> (3)  The space to write the expiration date shall consist of a light colored background, a holographic security image and a clear write resistant overlay with security features so that any attempt to change of [sic] modify the expiration date on the dealer temporary license plate

---

[2]  The requirement of a temporary license plate is specific:  "Any motor vehicle described in O.C.G.A. § 40-2-20 . . . that is operated on the public highways and streets of this State which has been purchased from a new or used car motor vehicle dealer shall display a temporary license plate . . . on the rear of such vehicle in the space provided for a license plate during the 30-day period prior to registration."  Ga. Admin. Code 560-10-17-.01(1).

will show an immediate sign of tampering.

(4)  The holographic security image shall be no smaller
than .5 inches high and 7 inches long.  It shall contain
a delaminating feature which, when the hologram is
tampered with or separated from the dealer temporary
license plate or overlay, shall cause the holographic image
to be destroyed.

(Govt.'s Obj. at 2-3) (citing Ga. Admin. Code 560-10-17-.05).  The Government

argues that these Administrative Code requirements also were referred to in the

Georgia Code, since the version of Section 40-2-8(b)(2)(B)(ii) of the Georgia Code

in effect in 2004 required that "[a]ll temporary plates issued by dealers after January

1, 2001, are required to be of a standard design prescribed by the Department of

Motor Vehicles regulations . . . ." (Govt.'s Obj. at 3) (citing O.C.G.A. § 40-2-

8(b)(2)(B)(ii) (2004)).  Failure to have a proper temporary tag displayed constituted

a misdemeanor criminal violation under O.C.G.A. § 40-2-8(a).  Based on these

provisions of the Georgia Administrative Code and Section 40-2-8(a) of the

Georgia Code, the Government claims that on July 14, 2004, a security strip was

required and a car without one was in violation of Georgia law.

## Standard of Review

After conducting a careful and complete review of the findings and

recommendations, a district judge may accept, reject or modify a magistrate judge's report and recommendation.  28 U.S.C. § 636(b)(1); <u>Williams v. Wainwright</u>, 681 F.2d 732, 732 (11th Cir. 1982), <u>cert. denied</u>, 459 U.S. 1112 (1983).  A district judge "shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1)(C).  This requires that the district judge "give fresh consideration to those issues to which specific objection has been made by a party."  <u>Jeffrey S. by Ernest S. v. State Bd. of Educ. of Ga.</u>, 896 F.2d 507, 512 (11th Cir. 1990) (quoting H.R. 1609, 94th Cong., § 2 (1976)).

Except as stated above, the parties have not objected to the facts set out by the Magistrate Judge in the Report and Recommendation and the Court adopts those facts as the factual findings of the Court.  The Court discusses and resolves below the objections asserted by Defendant and the Government regarding the Magistrate Judge's legal conclusions.

## *Discussion*

The issue here is whether Officer Whitsey had a reasonable and articulable suspicion, as required under <u>Terry v. Ohio</u>, 392 U.S. 1 (1968), that a law had been or was about to be violated.  The answer to that question lies in whether a drive-out

tag with a security strip was required under Georgia law as it existed on July 14, 2004, and whether the absence of the security strip from the vehicle here provided a reasonable and articulable basis for Officer Whitsey to believe the vehicle was in violation of O.C.G.A. § 40-2-8.

The Court first evaluates whether a drive-out tag with a security strip was required under Georgia law as it existed on July 14, 2004. Having reviewed the arguments of the parties, as well as the applicable Georgia Code and Administrative Code provisions, the Court concludes that it was. Section 40-2-8(b)(2)(B)(ii) of the Georgia Code required drive-out tags for cars sold by dealers, and expressly stated that format and content was to be prescribed by administrative regulation. See O.C.G.A. § 40-2-8(b)(2)(B)(ii) (2004). The applicable administrative regulation is Chapter 560-10-17 of the Administrative Code. Beginning in February 2001, subchapter .05 of this regulation, entitled "Security Specifications," required that drive-out tags issued by dealers include the security strip at issue here. See Ga. Admin. Code 560-10-17-.05 ("The space to write the expiration date shall consist of a light colored background, a holographic security image and a clear write resistant overlay with security features so that any attempt to change or modify the expiration date on the [drive-out tag] will show an immediate sign of tampering.").

9

Accordingly, the Court finds that, under Georgia law as it existed on July 14, 2004, drive-out tags issued by dealers were required to have a security strip.[3]

Next, the Court evaluates whether the absence of the security strip from the vehicle here provided a reasonable and articulable basis for Officer Whitsey to believe the vehicle was in violation of Georgia law.  Officer Whitsey's testimony is unequivocal -- he believed the tag he saw on the vehicle violated the legal requirements for drive-out tags because it did not contain a security strip with application expiration information.  (See Transcript at 38) (testifying that the vehicle "had a drive-out tag on it without a validation sticker on it that is required by the state").  While Officer Whitsey may have been mistaken about the full scope of the information required to be displayed on the security strip, (see Transcript at 38)

_____

[3] That Officer Whitsey noticed the security strip was missing is consistent with Georgia law at this time, since it necessarily means that he expected the strip to be present on the drive-out tag.  Officer Whitsey was familiar with the drive-out tag requirement, thus he necessarily was familiar with the strips' presence on other tags.  In fact, he testified at the suppression hearing about his experience stopping vehicles which he believed violated O.C.G.A. § 40-2-8.  He testified he had stopped vehicles for violating this code section prior to July 14, 2004.  (Transcript at 39.)  This corroborates that Officer Whitsey was familiar with drive-out tags and what was required of them.  That the tag at issue did not have a validation strip was meaningful to him at the time of the traffic stop in July 2004.  That belief only makes sense if drive-out tags were required to have a security strip at this time.  Otherwise, the absence of it would not have caught his attention.

(stating that the security strip should contain the make, V.I.N. and the expiration

date" on it), he was certain the drive-out tag he saw did not have the security strip

and that this violated Georgia law.[4]

The record further indicates that Officer Whitsey believed the security strip

was required on the particular tag that appeared on the vehicle he stopped.  Officer

Whitsey referred to the temporary license plate on the vehicle as a "drive-out tag"

on which he expected to see a security strip, indicating his belief that the vehicle

was purchased from a new or used car dealer.  (See Transcript at 38.)  In his report

of the incident, he identified the tag as a "drive-out tag with no validation decal."

---

[4]  Under the circumstances here, Defendant's reliance on United States v. Chanthasouxat, 342 F.3d 1271 (11th Cir. 2003), and the line of Georgia Court of Appeals cases cited in Defendant's Objection is misplaced.  In Chanthasouxat, the officer made a stop based on his belief the law required a car to have an inside rear view mirror.  342 F.3d at 1275-76.  The court found that Alabama law did not impose that requirement and therefore a stop based on an alleged violation of a law that did not exist was not valid.  Id. at 1277-80.  That is not the case here, where the Court determines drive-out tags were required to have a security strip and that the absence of the strip was the basis of Officer Whitsey's stop.  The Georgia Court of Appeals cases cited by Defendant stand for the proposition that a stop to investigate the registration or licensing of a vehicle with a facially valid drive-out tag is improper.  Here, the drive-out tag was believed not to comply with a fundamental requirement of the tag, thus it was not facially valid.  See Buis v. State, 563 S.E.2d 527, 530 (Ga. Ct. App. 2002); Berry v. State, 547 S.E.2d 664, 673 (Ga. Ct. App. 2001).

(Id. at 35.)  Viewing his testimony as a whole, there is nothing to indicate that what he saw was a makeshift, homemade or other ad hoc tag that a purchaser might make when he or she buys a vehicle from another individual.  Rather the evidence is that Officer Whitsey believed he was dealing with a drive-out tag of the type provided by dealers, only one that was non-complying.  There is no evidence in the record to suggest that a reasonable officer would have believed the vehicle was obtained in a non-dealer transaction.  For this reason, Defendant's argument that Officer Whitsey should have considered that the vehicle was not dealer-acquired, and thus was not required to have a drive-out tag or security strip, is not convincing.

The relevant facts here persuade the Court that the Government has met its burden to show Officer Whitsey had a reasonable and articulable basis for the stop and that the stop was constitutionally proper.  Because Defendant's motion to suppress is based on his challenge to the stop, and the stop has been found to be valid, the evidence seized and the statements made are admissible.

*Conclusion*

The Court having made a *de novo* determination of those portions of the Report and Recommendation to which objection is made, and based on the

12

reasons discussed above,

**IT IS HEREBY ORDERED** that the Magistrate Judge's Report and

Recommendation [27] is **ADOPTED IN PART** and Defendant's Motion to

Suppress [14] is **DENIED**.


**SO ORDERED** this 23rd day of February, 2006.


WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE